DONALD NOVAK, APPELLEE AND CROSS-APPELLANT, V. TRIANGLE STEEL COMPANY, APPELLANT AND CROSS-APPELLEE.
251 N. W. 2d 158
Filed March 2, 1977. No. 40809.

William J. Lamson, Jr., and John K. Green of Kennedy, Holland, DeLacy & Svoboda, for appellant.

Thomas R. Wolff, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.
Triangle Steel Company, defendant, appeals from a compensation award to Donald Novak, plaintiff. He was awarded temporary total and permanent partial

disability, hospital and medical expenses, and vocational rehabilitation services. Plaintiff cross-appeals, contending the temporary total disability should have been awarded for a longer period. The question raised by the defendant is the applicability of the statute of limitations. We reverse the judgment and dismiss the action.

On November 29, 1972, plaintiff injured his back as the result of an accident arising out of and in the course of his employment by the defendant. The injury was diagnosed as a herniated disc between the fourth and fifth lumbar vertebrae. A partial hemilaminectomy was performed on December 7, 1972. Plaintiff returned to work for defendant on March 28, 1973, doing the same type of work as before. Plaintiff testified he continued to have soreness in his back following the operation and that he last consulted the doctor about the problem in June 1973.

Plaintiff and defendant entered into a lump sum settlement to compensate plaintiff for the injury. The settlement was approved by the District Court for Douglas County on March 28, 1973. It contained a provision releasing defendant from any further liability arising out of that injury.

Plaintiff was injured again on October 23, 1973, while employed by the defendant. He twisted his ankle in some loose sand while stepping down from a crane and fell, striking his right hip and shoulder. After resting for 20 minutes he returned to work for the day.

The following morning he went to the emergency room of Methodist Hospital for treatment of his ankle and right shoulder. X-rays taken of his ankle and shoulder proved negative. Some 2 or 3 days later plaintiff visited his family physician. Plaintiff testified his back was sore, but he attributed this to his original injury. Defendant's compensation carrier paid all medical and hospital bills through October 1973.

Plaintiff returned to work on October 30, 1973. He

continued to work in the same capacity until December 28, 1973. Plaintiff testified that during this time his feet were numb, he could not lift his left arm, he had cramps, and he eventually could work with only one arm.

Plaintiff consulted a doctor on December 31, 1973, and was placed in the hospital. A myelogram performed on January 5, 1974, revealed an extruded lumbar disc in the lumbosacral space on the right side. Surgery was performed on January 10, 1974, and the disc between the fifth lumbar and the sacrum was removed. The incision for this surgery was made through the scar tissue of the first surgery as the injuries were approximately 2 inches apart. Plaintiff testified that despite inquiries he made, the doctors did not inform him why the second surgery was required. The surgeon could not recall whether he advised plaintiff that the second injury involved a different disc.

Plaintiff did not return to work for defendant following this surgery. The doctor released him to do light work in June 1974. Plaintiff was unable to obtain permanent employment until August 1975, when he began his present job as a salesman. Plaintiff did not make a compensation claim for the 1974 surgery. He did file an insurance claim with the defendant's group health carrier, which was paid.

In August 1974, while consulting with an attorney on an unrelated legal matter, plaintiff discussed his back problem. He was referred to his present attorney who investigated the possibility of a malpractice action.

Plaintiff alleges that he was not aware he might have a compensable claim for the back surgery of January 10, 1974, until November 1, 1974. Until that time, he did not know the surgery in 1974 was on a different disc than that removed in November of 1973.

Plaintiff's attorney sent a letter to defendant on November 25, 1974, informing it for the first time of No-

vak's possible compensation claim for a back injury. A copy of this letter was forwarded to the employer's compensation carrier on December 5, 1974. This action was filed February 6, 1975.

After an award by a single judge of the Workmen's Compensation Court, defendant gave notice of a waiver of a rehearing before the Nebraska Workmen's Compensation Court en banc. It appealed directly to the District Court for Douglas County, Nebraska. The District Court affirmed the award.

The issue in this appeal is whether Novak's claim is barred by the provisions of section 48-137, R. R. S. 1943, of the Workmen's Compensation Act. It provides, so far as material here: "* * * all claims for compensation shall be forever barred unless * * * within one year after the accident, one of the parties shall have filed a petition as provided in section 48-173."

There is no controversy surrounding the fact that Novak was injured on October 23, 1973, during the course of his employment by defendant. It is also undisputed that the October 23 injury directly necessitated the surgery performed on January 10, 1974. Novak's testimony that he did not know he had suffered a compensable claim for his back injury of October 1973, until November of 1974, is also undisputed. Novak filed his petition with the Workmen's Compensation Court on February 5, 1975, or more than 15 months after the injury.

This case is controlled by Raymond v. Buckridge, Inc., 195 Neb. 212, 237 N. W. 2d 412 (1976). In that case we held: "When an employee knows that an injury has occurred and that disability therefrom was due to his employment, the period for making claim and filing action is not extended even though he was ignorant of the application of the Workmen's Compensation Act to his situation."

For the purposes of this opinion we accept the conclusion that Novak continued to have problems with

his back following his first back surgery. He returned to the hospital in January of 1973, because of drainage problems. He continued seeing the doctor through June of 1973, because of a soreness at the point of the incision and because of a tingling sensation in his lower back. He was told by his doctor that he would just have to live with these problems. When he went to the hospital emergency room after his injury of October 23, 1973, he had treatment on his ankle and his right shoulder. While he testified his back was sore, he made no claim he had any problem with it.

The myelogram performed on January 5, 1974, revealed an extruded lumbar disc in the lumbosacral space on the right side. Surgery was performed on January 10, 1974, to remove the disc between the fifth lumbar and the sacrum. In the previous surgery a partial hemilaminectomy had been performed. That operation involved the disc at the L4 - L5 interspace, or approximately 2 inches above the veterbrae removed in the subsequent surgery.

The District Court held the action was not barred by the statute of limitations. It concluded that plaintiff had mistakenly believed the second back problem was an aggravation of or the result of the original injury for which he had been compensated. It held this to be a mistake of fact which would prevent the statute of limitations from running until November 1974, when plaintiff became aware that the injuries were unrelated.

We disagree with the trial court's conclusion. Novak had sufficient facts to put a reasonable man on notice. When he entered the hospital in December 1973, Novak knew he had suffered a disabling injury. He related that injury to the accident of October 23, 1973. He accepted benefits from his employer's group health carrier for hospitalization and surgical care between December 31, 1973, and January 17, 1974.

When his case history was taken by the doctor, No-

vak stated that he was injured in a fall on October 23, 1973. His mistake was that he did not know compensation was available to him as a result of the October 23 accident for a new injury. He knew this accident increased his back problem, but believed his injury was not compensable. At trial, Novak testified that he didn't go to the doctor for his back problem. "I didn't think it was that severe; and besides, I didn't have no claim on my back." Yet, the fact that a myelogram was performed pointed up a possible back problem. The surgery confirmed it.

Plaintiff is placing great reliance on Borowski v. Armco Steel Corp., 188 Neb. 654, 198 N. W. 2d 460 (1972), and Williams v. Dobberstein, 182 Neb. 862, 157 N. W. 2d 776 (1968). Those cases involved lack of knowledge of the seriousness of a latent injury, not the question present herein. Here, we are dealing with the lack of knowledge that a disability sustained from an injury is compensable, which is the type of situation dealt with in Raymond v. Buckridge, Inc., 195 Neb. 212, 237 N. W. 2d 412 (1976).

Novak's excuse that he didn't think he could get any more compensation because of the previous lump sum settlement is not a mistake of fact. Rather, it is mistake of law. In certain limited situations it might be possible to recover. Here, however, it is a new injury which is involved.

On the excusability of a mistake of law to prevent the running of the statute of limitations, Larson in his treatise, Workmen's Compensation Law, Volume 3, section 78.47, states: "A mistake of law is no more an excuse in connection with a late compensation claim than anywhere else, unless expressly made so by statute."

Novak's brief has the following alleged quote from Surratt v. Otoe Food Products Co., 146 Neb. 854, 21 N. W. 2d 862 (1946): "The Statute of Limitations commences to run from the time the employee has full

knowledge that an accident has caused a compensable claim." He also has this statement as Proposition of Law III, with the Surratt decision as authority for it: "The Statute of Limitations commences to run from the time the employee has full knowledge that an accident has caused a compensable claim." The quoted language is not in the Surratt case.

The rule plaintiff is contending for is probably an adaptation of the rule applicable to latent and progressive injuries. Where an injury is latent and progressive, the tolled statute of limitations begins to run against an employee from the time it becomes reasonably apparent, or should have become reasonably apparent, that he has a compensable disability of any class from an accident, if the employee is aware that the disability is due to his employment. Ohnmacht v. Peter Kiewit Sons Co., 178 Neb. 741, 135 N. W. 2d 237 (1965).

Plaintiff does not contend his injury was latent or progressive. His contention is he did not realize he had a compensable injury because he thought the lump sum settlement foreclosed him from making a claim for anything further related to the 1972 back injury.

Plaintiff is now contending that although his back hurt at the time of the 1973 injury, he did not mention it because of the belief that it was not covered. When, however, the myelogram performed on January 5, 1974, revealed an extruded lumbar disc, he had sufficient information to raise a question as to its cause. On January 10, 1974, when the disc between the fifth lumbar and the sacrum was removed, it was unquestionably evident that he had an injury which flowed from an accident. It was then Novak's obligation to ascertain whether or not there was any relation between this operation and the first injury. Any investigation would have disclosed that the second operation was not in any way related to the first one. The limitation provided by section 48-137, R. R. S. 1943, starts to run

from the time it becomes reasonably apparent or should have become reasonably apparent that a compensable claim exists.

To permit a claimant to ignore facts of this nature and to toll the statute of limitations would, in effect, be a repeal of section 48-137, R. R. S. 1943. A moment's reflection will show the ease with which the intent of the statute could be thwarted. If we sustain Novak's contentions, all a future claimant would have to do to get around the statute would be to claim that he did not know he had suffered a compensable claim. If the statute is to be repealed, the Legislature should do it.

We reaffirm our holding in Raymond v. Buckridge, Inc., 195 Neb. 212, 237 N. W. 2d 412 (1976). When an employee knows that an injury has occurred and that disability therefrom was due to his employment, the period for making claim and the filing of the action is not extended even though he was ignorant of the application of the Workmen's Compensation Act to his situation.

The judgment is reversed and the cause dismissed.

REVERSED AND DISMISSED.

McCOWN, J., dissenting.

The majority opinion ignores the specific findings of fact of both the Workmen's Compensation Court and the District Court and determines that the only mistake in this case was a mistake of law and not a mistake of fact. Therefore this court holds that plaintiff's claim for compensation is barred by the statute of limitations.

It is undisputed that plaintiff had injured his back in a previous accident on November 29, 1972, and had thereafter made a lump sum settlement for that injury. It is undisputed that the plaintiff was still having difficulties with the 1972 back injury up to the time of the second accident on October 23, 1973. It is also undisputed that the October 1973, accident caused an

ankle and shoulder injury and only some back pain, and that plaintiff experienced no immediate disability because of his back, but his "main concern after the October 23rd incident was the ankle and shoulder." The critical issue of fact is whether the plaintiff knew or reasonably should have known that the back problems he suffered subsequent to the 1973 accident were the result of the 1973 accident rather than the result of the 1972 accident. The issue is not at all whether he thought they were compensable or not compensable. The issue is one of fact and was so treated by both the Workmen's Compensation Court and the District Court. The Workmen's Compensation Court specifically found: "(T)hat plaintiff reasonably believed that the low back and toe numbness symptoms he experienced following his October 23, 1973, accident and injury were a reoccurrence of the back injury of November, 1972, since the same area of his low back was involved and did not know until November 1, 1974, that said symptoms were the result of the October 23, 1973, accident and injury and involved the L5-S1 area rather than the L4-L5 area of his low back; * * *."

The District Court specifically found: "The evidence also establishes that the back injury suffered October 23, 1973, did not immediately manifest itself; that the plaintiff assumed that the L-4 disc was involved; and that the plaintiff was not told until November of 1974 that the L-5 injury, traced to the October 23, 1973, accident, was not the same as that caused by the November 1972 incident."

The opinion of the District Court states: "It is my opinion that the plaintiff reasonably did not know or suspect until November of 1974 that the second back injury was or might be compensable; that the plaintiff honestly, though mistakenly, thought the second back problem was an aggravation or result of the original injury for which he had been compensated; that plain-

tiff's mistake was one of fact; * * * and that there has not been a showing of prejudice to the employer."

Obviously the District Court, as well as the compensation court specifically found that the plaintiff reasonably did not know that the second back injury was or might have been the result of the second accident rather than the original 1972 injury. The plaintiff did not even know until November 1974, that the second injury and operation involved a different disc in his back, which was only 2 inches away from the 1972 injury. In fact, the same point of incision was used for both surgeries, leaving only one longer scar. The majority opinion has not only ignored specific findings of fact, but has converted them into a conclusion that the plaintiff's only mistake was a mistake of law. The foundation for that conclusion is that plaintiff did not know that an aggravation to the first injury, if caused by the second injury, would have been compensable. There was more than that that he did not know. He didn't know that the second back injury and operation were the result of the second accident rather than the first.

Our cases dealing with the statute of limitations in workmen's compensation cases such as this have consistently held that the statute of limitations begins to run against an employee from the time it becomes reasonably apparent or should have become reasonably apparent that he has a compensable disability of any class from *an* accident or injury, if the employee is aware that the disability is due to his employment. *An* accident or injury under such holdings means only the accident or injury out of which the claim for compensation arises. The fact that there may have been other former accidents or injuries in the course of the employment, whether those injuries were compensable or not compensable, does not destroy the requirement that the employee must have known or had reasonable

grounds to know of the causal connection between the specific accident or injury and the disability.

This case was tried before the provisions of section 48-185, R. S. Supp., 1976, became effective and made findings of fact of the Workmen's Compensation Court have the same force and effect as a jury verdict. Nevertheless, the law requires in this case if there is reasonable competent evidence to support the findings of fact in the Workmen's Compensation Court and the District Court, the award will not be modified for insufficiency of the evidence on appeal to this court. Gifford v. Ag Lime, Sand & Gravel Co., 187 Neb. 57, 187 N. W. 2d 285. The Workmen's Compensation Act should be liberally construed to the end that its beneficent purposes may not be thwarted by technical refinement of interpretation. Thomsen v. Sears Roebuck & Co., 192 Neb. 236, 219 N. W. 2d 746. The majority opinion here ignores both of those principles. The judgment of the District Court should have been affirmed.

CLINTON, J., concurring.

I concur generally in the majority opinion. What follows, will, I hope, make apparent the reason for a separate concurrence. I think it may be conceded that the plaintiff did not know until November 1974 that he had suffered a new and different accidental injury to his back on October 23, 1973. It is hardly conceivable that had he been informed by his doctor after the surgery in January of 1974, that that surgery involved a different disc from that in the previous surgery, he would not have promptly made claim for workmen's compensation. It should be equally clear that, had the plaintiff inquired of his doctor what the surgery showed, he would have been informed of what he did not know until November 1974. The question is, was he required to make such inquiry? It is in this connection that the dissenting opinion indicates some confusion about what tolls the statute. The dissent says: "The majority opinion has not only ignored specific findings of fact,

but has converted them into a conclusion that the plaintiff's only mistake was a mistake of law. The foundation for that conclusion is that plaintiff did not know that an aggravation to the first injury, if caused by the second injury, would have been compensable. There was more than that, that he did not know. He didn't know that the second back injury and operation were the result of the second accident rather than the first." The confusion which this statement shows is as to the standard which is applicable. The standard, as the opinion of the court indicates, is the same as in case of latent and progressive injuries, that is, the statute begins to run from the time "it becomes reasonably apparent *or should have become reasonably apparent*" that he had a disability which arose from an accidental injury arising out of and in the course of his employment. (Emphasis added.) Ohnmacht v. Peter Kiewit Sons Co., 178 Neb. 741, 135 N. W. 2d 237. This court has apparently never attempted to precisely define "should have become reasonably apparent" in cases of this type. Other courts have indicated that this means "in the exercise of reasonable care *should know*." 100 C. J. S., Workmen's Compensation, § 436, p. 304, cases cited Note 48.

In this case it is apparent that both the Nebraska Workmen's Compensation Court and the District Court were applying the wrong standard. Their findings related to the objective lack of knowledge of the petitioner. Where a mere inquiry by the patient of his surgeon would have disclosed the information, it must be said that as a matter of law the injury and the cause "should have been readily apparent" to the workman. This is not a case such as Borowski v. Armco Steel Corp., 188 Neb. 654, 198 N. W. 2d 460, where the petitioner's ignorance was caused by the inability of a number of doctors to diagnose the injury and to determine its cause.

I further wish to point out for the purpose of clari-

fying the issue, that the plaintiff had a compensable injury whether he suffered an entirely new injury because of the incident of October 23, 1973, or whether, by reason of accidental injury arising out of and in the course of his employment on that date, he merely aggravated the earlier injury, i.e., the changed condition was not merely a natural progression of the first injury. Turner v. Beatrice Foods Co., 165 Neb. 338, 85 N. W. 2d 721. I think the majority opinion does not make this quite clear. It is, of course, no longer necessary, that in order for an injury to be compensable, there be an accident — although in this case the evidence indicates there was. It is only necessary that there be "an unexpected or unforeseen injury happening suddenly and violently . . . and producing at the time objective symptoms of an injury." § 48-151(2), R. R. S. 1943. See, also, Brokaw v. Robinson, 183 Neb. 760, 164 N. W. 2d 461. There is no dispute here that the petitioner knew on October 23, 1973, that he had had an accident and suffered an injury. In January of 1974, following the surgery, a simple inquiry of his surgeon would have informed him of its nature and its cause.